### REND *v.* VENTURE OIL CO.

(*Circuit Court, W. D. Pennsylvania.* November 18, 1891.)

1. PRELIMINARY INJUNCTION—COAL MINES—SINKING OIL AND GAS WELLS.
   The drilling of an oil or gas well through a part of a coal mine from which all the coal has been extracted except what is necessary for the props would not by its mere physical damage to the mine, or its effect as an obstruction, threaten such an injury to one owning the coal and the right to mine it as would warrant the issuance of a preliminary injunction.

2. SAME.
   Such an injunction will not issue to restrain interference with certain deep-lying veins, where on the affidavits it appears doubtful whether those veins extend under the tract.

3. SAME—AFFIDAVITS.
   A preliminary injunction will not be issued upon numerous affidavits by miners, engineers, and chemists that there would be great danger of explosions in the mine from the escape of gas through leaks in the casing likely to be caused by the falling of rocks or the slipping of the earth above, and from corrosion thereof by sulphur water, when these averments are contradicted by numerous affidavits equally entitled to credit; especially so in view of the fact that special precautions are to be taken in this instance to prevent leaks, and the further fact that there is much doubt as to the respective rights of the miner and the owner of the fee.

In Equity. Bill by William P. Rend against the Venture Oil Company to restrain it from drilling a well through his coal mine. On motion for preliminary injunction. Overruled.

*D. T. Watson, J. S. Ferguson,* and *John G. MacConnell,* for the motion.
*D. F. Patterson, W. F. McCook,* and *A. M. Todd,* opposed.

REED, J. The bill alleges that plaintiff, engaged in the business of mining coal, is the owner of all the coal underlying a tract of land in Allegheny county, Pa., together with a perpetual right of way, or right to use the under-ground entries for the removing of said coal, or any other coal for which said entries may be convenient, and the right to construct any shafts that might be necessary or useful for air and drainage purposes in the mining of said coal; that he is the owner of all the veins of coal under said land, including the Pittsburgh vein, the Freeport vein, and the Kittanning

vein, lying at varying depths below the surface; that the defendant, claiming to have permission from the owner of the surface, has entered upon the surface immediately over the said coal, and has erected a derrick, and threatens to drill a well in said land for the purpose of obtaining natural gas or oil, or both, and threatens to drill other wells for the same purpose in said land; that oil or gas cannot be obtained, except by drilling said wells to a depth of upwards of 2,200 feet, which will take such wells through all the veins of coal belonging to the complainant; that such wells will interfere with the removal of complainant's coal, will expose his mine to leakage of gas from said wells, and will render the mining operations conducted by complainant in said property so hazardous to his property and employes as to very greatly injure and depreciate the value of said coal property; that it will be impossible to prevent the escape of gas from said wells into said coal mines, and the presence of such gas in the mine, by reason of its inflammable and explosive nature, will occasion explosions and fires; that the coal under said property, with adjacent coal, constitutes the complainant's coal works and plant which he is now engaged in mining; that the defendant has no right to drill through complainant's coal; that such action on the part of the defendant will cause irreparable injury to the complainant. The bill prays an injunction to restrain the defendant from drilling the well which it has commenced, or any other wells, through complainant's coal. The case is now before the court on a motion for a preliminary injunction. There are certain well-settled rules regulating the granting of preliminary injunctions which must govern in passing upon this motion. They are that the complainant must show a clear legal or equitable interest or right which is to be protected; that there must be a well-grounded apprehension of immediate injury to those interests or rights, and a clear necessity must be shown of immediate protection to such interest or right, which would otherwise be seriously injured or impaired. If it appears that the preliminary injunction is not necessary to preserve interests or property *in statu quo* until final hearing, and the rights of the complainant will suffer no serious injury until that time, or that the injury threatened is of such nature that it can be remedied on final hearing, then the injunction ought not to be granted. And so if it appears that the complainant's rights are not sufficiently clear, and the considerations of respective convenience or inconvenience to parties complainant and defendant, when balanced, show that serious injury may be done to the defendant by the granting of the injunction, and no serious injury will be done to the complainant by withholding it until final hearing, then the injunction ought not to be granted. Other considerations may have at times been held as controlling in special cases, but the general rules, as I have stated, are those which have been held as governing the discretion which is to be exercised in passing upon such motions.

The affidavits presented at the argument show that the coal, at the point where defendant is drilling its well, was mined out (with the exception, perhaps, of the pillars left to support the surface during the mining operations) several years ago, and active operations in that local-

ity abandoned for the time being; that the entries have fallen in, and access is difficult, if not impossible, to that portion of the mine. Recently an entry some distance from the well has been cleaned out, the fallen rock and obstructions removed. and is now in use, as a main entry, to reach another and distant body of coal. While the deed under which complainant holds vests in him certain mining privileges still in force, although the coal may be removed, yet he is not at present exercising those privileges in the vicinity of defendant's well, and it does not appear that there is any immediate necessity for their exercise at that point. He suffers no present injury, from which he requires immediate relief, by the mere obstruction caused by the presence of defendant's casing in the space which he may be entitled to use under his deed, or by the penetration of any small body of coal which he may have left in that locality to support the surface, by defendant's well. The well, considered solely as taking up so much space, does not in any way now interfere with his mining operations, and, so far as it may have been the cause of the removal of a small quantity of coal by the operation of drilling, (if it has penetrated the coal at all,) compensation can be provided for at final hearing. What I have said has reference to the Pittsburgh vein of coal. It does not appear that either the Kittanning or Freeport vein extends under this property, that question being left in doubt by the affidavits, and hence complainant is not entitled to an injunction to restrain interference with those veins of coal.

The complainant, however, alleges that the result of the drilling of this well will be (if it is at all productive) to bring to the surface inflammable and explosive gas; that there is great danger that the falling of rock, or the sliding or creeping of the land above, both of which are said to frequently occur in coal mines after the coal is removed, may break the casing of the well, causing the gas to escape into the mine, with consequent danger of explosion and loss of life and property; also that the sulphur water which is found in this mine will eat and corrode the casing so that it will not retain the gas, which will hence escape into the mine, with the same danger to life and property; that this gas will find its way through the old workings into the present mine, although at considerable distance from the well. To support these propositions a large number of affidavits of coal miners, engineers, and chemists were read on behalf of plaintiff. Affidavits on the contrary were read on behalf of defendant, made by oil operators, some of many years' experience, and by coal miners, averring the opinion that an oil or gas well could be safely drilled and operated through a coal mine, and instances were given where wells had been drilled, some of them many years ago, and operated without accident, and, although many of such wells have been drilled through coal and coal mines,—one affidavit putting the whole number so drilled since oil was first discovered at 50,000,—yet defendant's affidavits state that there has never been an accident or disaster in a coal mine as a result of such drilling, and no instance is cited by plaintiff to sustain his theories. Defendant's affidavits also deny the effects alleged to result from sulphur water, and defendant's counsel pro-

duced at the argument a piece of casing, apparently sound, which an accompanying affidavit stated had been in direct contact with sulphur water for about five years in other wells, and was still in sound condition. Extra precautions have been prescribed in the contract for the drilling of the well in question, and a double line of casing is to be used to a depth of 25 feet below the bottom of the Pittsburgh vein of coal, the outside of the casing to be painted with a preparation said to prevent any action of sulphur water upon the iron, and the space between the two casings is to be filled up to the Pittsburgh vein with cement as an additional precaution. Under these circumstances I cannot say that there is a well-grounded apprehension of immediate injury to plaintiff's interests or property which will justify the granting of a preliminary injunction. His rights can be fully protected on final hearing, if they are found to require protection. On the other hand, while it does not appear that any immediate injury will result to plaintiff by withholding the injunction, it does appear that serious injury and inconvenience would result to the defendant by restraining its further prosecution of its work. And, finally, the relative rights and duties of the plaintiff, as owner of the coal and mining privileges and the owner of the surface and underlying portion of the land, and the defendant, as his lessee, are exceedingly difficult of definition, and ought not to be hastily determined upon a preliminary application, especially as the state courts are at present trying to define those rights as rules of property under the law of the state of Pennsylvania. The motion for a preliminary injunction must be refused; and it is so ordered.